**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ROBERT CANADY, | Case No. EDCV 10-0392-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Robert Canady seeks judicial review of the Social Security Commissioner's denial of his application for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI of the Social Security Act. For the reasons stated below, the matter is remanded for further proceedings consistent with this opinion.

**I.   Facts and Procedural Background**

Plaintiff was born on October 20, 1967. He completed the eleventh grade and has no past relevant work. (Administrative Record ("AR") at 15, 83, 137.) Plaintiff filed an application for

SSI on February 23, 2006,[1] alleging disability as of April 14, 2005, due to a psychological impairment and an injury to his right hand. Plaintiff's application was denied initially and upon reconsideration. (AR at 19, 57, 64.) Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") F. Keith Varni on July 18, 2007. However, his attorney was not present and the hearing was postponed. (AR at 301-05.) Plaintiff appeared at two subsequent hearings before ALJ Varni on September 24, 2007, and February 13, 2008. (AR at 281-300.) Plaintiff was represented by counsel at both hearings and testified on his own behalf. In addition, vocational expert ("VE") Joseph Mooney, and Plaintiff's girlfriend, Sherry McKinley, testified at the February 2008 hearing. (*Id.*)

ALJ Varni issued an unfavorable decision on March 10, 2008. (AR at 7-17.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of February 23, 2006, and suffered from the following severe impairment: "a musculoskeletal impairment involving the right hand." (AR at 12.) As discussed in detail below, the ALJ found that Plaintiff did not have a severe mental impairment within the meaning of the Social Security Act. Plaintiff's severe hand impairment did not meet the requirements of a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Plaintiff had no past

---

[1] The record indicates that Plaintiff filed a prior application on June 9, 2005, which was denied initially and upon reconsideration. (AR at 18, 84.) It appears Plaintiff did not further pursue that application, and both parties agree that the SSI application at issue in this lawsuit was filed on February 23, 2006. (Joint Stip. at 2.)

relevant work, but retained the residual functional capacity ("RFC") to perform light work[2] with the following modifications:

> [He can engage in] only occasional handling, fingering, and pushing/pulling with the right upper extremity. He can frequently (1/3 to 2/3 of the work day) feel with the right upper extremity. He can frequently crawl and climb stairs/ramps but can only occasionally climb ladders, ropes, and scaffolds. He can frequently: work at unprotected heights; work around moving, mechanical parts; and operate a motor vehicle. There are no nonexertional limitations with the left upper extremity.

(AR at 13.) Finally, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs Plaintiff could perform in the national and local economy based on the testimony of the VE. (AR at 14-16.)

The Appeals Council denied review on February 17, 2010, (AR at 2-4), and Plaintiff commenced this action on March 15, 2010. Plaintiff argues the ALJ erred by (1) finding that his mental impairment was not severe at step two of the disability determination; (2) improperly disregarding the lay testimony of Plaintiff's girlfriend; and (3) concluding that Plaintiff retains the residual functional capacity to perform work in the national

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds...[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

3

economy.[3] (Joint Stip. at 2-3.) Plaintiff asks the Court to reverse the ALJ's decision and order an award of benefits, or, in the alternative, remand for further proceedings. The Commissioner requests that the ALJ's decision be affirmed.

## II. **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

---

[3] Plaintiff initially contended that the ALJ improperly rejected his credibility. However, that claim was withdrawn. (Joint Stip. at 21-26.)

4

**III. Discussion**

    **A.   The ALJ's Conclusion That Plaintiff Does Not Suffer From A Mental Impairment Is Supported By Substantial Evidence**

At step two of the sequential analysis, the ALJ found that Plaintiff's mental impairment was not severe within the meaning of the Social Security Act. (AR at 12-13.) The ALJ reviewed the mental health records submitted by Plaintiff and concluded that they do not demonstrate "any mental limitations that would preclude the performance of simple, unskilled work activities." (AR at 12.) Plaintiff argues that these conclusions are not supported by substantial evidence.

A claimant for disability benefits has the burden of producing evidence to demonstrate that he or she was disabled within the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). An impairment is

not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Here the ALJ relied on the opinion of consultative examining psychiatrist Linda M. Smith, M.D., to conclude that Plaintiff does not have a severe mental impairment. A consultative examining physician's opinion amounts to substantial evidence supporting a finding if it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that where treating physician's opinion is contradicted by examining physician's opinion based on independent findings, "it is then solely the province of the ALJ to resolve the conflict."). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 632 (internal citations omitted).

On November 20, 2007, Dr. Smith conducted a complete psychiatric evaluation of Plaintiff at the request of the Commissioner. (AR at 158-67.) Dr. Smith reviewed Plaintiff's mental health records from February 2006, December 2006, and January through August 2007 and interviewed Plaintiff about his mental health history. Dr. Smith found Plaintiff to be "not credible at all" when describing his history and symptoms because he was vague, inconsistent, evasive, and could not describe the symptoms he reported in his medical records. (*Id*. at 158-61.) Dr. Smith noted that the friend who accompanied Plaintiff to the appointment filled

6

out the mental health questionnaire, and that Plaintiff deferred to "whatever she wrote down" when he could not answer Dr. Smith's questions. (*Id*. at 161-62.)

Dr. Smith reviewed Plaintiff's medications. Plaintiff reported taking Wellbutrin and Lexapro and showed Dr. Smith bottles that he picked up from the drug store the day before. Plaintiff also produced a bottle of Seroquel with a 25-day supply from August 23, 2007. There were still three pills left in the bottle, indicating to Dr. Smith that Plaintiff was not compliant with medication. (*Id*.) Plaintiff reported that he could perform activities of daily living, such as dressing himself, going to the store, walking, watching television, and making snacks and "easy food if his arm is okay." His friend reported that he does not relate well to people and cannot handle cash because he might misplace it. (*Id*. at 163.)

Dr. Smith conducted a full mental status exam during which Plaintiff did not volunteer information spontaneously and was "barely superficially cooperative." (*Id*. at 163.) She found no evidence of his claims, significant evidence of exaggeration and manipulation, and concluded: "The entire interview appears to have been staged." (*Id*. at 163-64.) Plaintiff's thought process was coherent and organized and his speech was normal. Dr. Smith found no evidence of a thought disorder or psychosis, noting that Plaintiff was "relevant and non-delusional...[with] no bizarre or psychotic thought content." (*Id*.) Plaintiff did not have suicidal or homicidal ideation. Dr. Smith noted that Plaintiff "claims to have every type of hallucination I ask him about which is very rare outside of some cases of organicity, which [Plaintiff] does not have." (*Id*.) Plaintiff did not appear to be responding to internal

7

stimuli during the interview.

Based on the exam as well as tests of Plaintiff's memory, concentration, fund of knowledge, insight and judgment, Dr. Smith concluded that Plaintiff did not have a diagnosable mental health condition and was not functionally impaired in his ability to work as a result of any mental impairment. (*Id*. at 164-66.) She found no evidence supporting his claims, and noted that the symptoms he had reported in his prior mental health records were not psychotic, and were only "sometimes seen with stress or depression, but actually, I don't believe that any of this is credible taking his entire presentation into account." (*Id*.)

The ALJ properly relied on Dr. Smith's report, which is both based on independent clinical findings and supported by substantial evidence. Indeed, Dr. Smith's report contains the most thorough and detailed evaluation of Plaintiff in the entire record; the other mental health records consist primarily of brief notes of the symptoms reported by Plaintiff upon intake, medication refill appointment, and checkbox forms. (*See* AR at 173-93.) The ALJ also noted that Dr. Smith's report is consistent with the opinion of state agency reviewing psychologists, who concluded that Plaintiff does not suffer from a severe impairment and had no mental limitations. (AR at 12-13, 239-54.) The ALJ's conclusion that the mental health treatment records from the Pheonix Clinic reflect routine outpatient treatment was reasonable, and his rejection of Dr. Raval's opinion about Plaintiff's mental health was proper because Dr. Raval is an osteopath and offered an opinion outside of his area of expertise. (AR at 13.) Accordingly, the ALJ's finding of no severe mental impairment is supported by "more than a

scintilla" of evidence such that this Court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

Finally, Plaintiff's brief argument that the ALJ abrogated his duty to develop the record is unpersuasive. Plaintiff asserts that the ALJ was required to seek out mental health treatment records from August 2007 through February 2008 because Plaintiff answered affirmatively when asked by his counsel at the February 2008 hearing if he was currently seeing a psychiatrist. He argues that in the absence of records between those dates, the record was "insufficient to determine disability." (Joint Stip. at 10-11.) Although the ALJ is required to "develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel," that duty is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).

Under the circumstances of this case, it was not necessary for the ALJ to further develop the record. As discussed above, the ALJ had adequate evidence with which to make a step two determination regarding Plaintiff's mental impairment. The ALJ did not find that the medical records or opinions of the treating, examining, and reviewing physicians were ambiguous. Instead, the ALJ reviewed the differing opinions and adopted Dr. Smith's opinion, which was supported by substantial evidence. In addition, it is worth noting that in the two years since the ALJ issued his decision, Plaintiff has not to come forward with any new information suggesting that the record was ambiguous or not fully developed at the time of decision. As such, the ALJ did not fail to develop the record, and

relief is not warranted on this claim of error.

**B.  Inconsistencies Between The Vocational Expert's Testimony And The DOT Require Remand**[4]

Plaintiff argues that the VE's testimony was unreliable because the VE (1) did not explain inconsistencies between jobs identified in the Dictionary of Occupational Titles and the functional limitations identified in the hypothetical, and (2) provided ambiguous testimony about the exact number of available jobs that Plaintiff could perform. (Joint Stip. at 30-33.) For the reasons stated below, the Court agrees.

At the hearing, the ALJ asked the VE whether jobs existed for a person of Plaintiff's background, age, education, work experience, and a residual functional capacity to perform simple, routine, repetitive, non-public, light work with "minimal restrictions to the right upper extremity, limiting reaching and handling and fingering to occasional." (AR at 289.) Based on these restrictions, the VE responded that such a person would be capable of performing the jobs of outside deliverer, ticket taker, and counter clerk. (*Id*. at 289-90.) The ALJ continued:

> <u>ALJ</u>: What's the number of those jobs in the regional economy of Los Angeles, Orange, Riverside, and San Bernardino Counties?
>
> <u>VE</u>: In the broad regional economy, they exist in excess of 2,000 in several regions, the national economy is up to

---

[4] The Court has not reached the question of whether the ALJ improperly rejected the testimony of lay witness Sherry McKinley. While the issue appears to be close, the ALJ may revisit this issue on remand. If he again discounts Ms. McKinley's testimony on remand, he should be more specific about the reasons for doing so.

20,000.
(AR at 289-90.)

Plaintiff has provided the name, DOT number, and description of the outside deliverer (DOT 230.667-010) and ticket taker (DOT 737.687-182) positions and points out that they call for frequent handling, which is inconsistent with the limitation in the hypothetical to only occasional handling with the right hand. (Joint Stip. at 30-31.) Plaintiff did not identify any inconsistencies between Plaintiff's RFC and the counter clerk position (DOT 249.366-010) and assumed for purposes of argument that there were none. (*Id.*)

Although evidence provided by a VE is generally expected to be consistent with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Rather, the DOT raises a rebuttable presumption as to a job classification, and "[a]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995); *Massachi*, 486 F.3d at 1153 (when a conflict between a VE's testimony and the DOT arises, the ALJ must make an inquiry with the VE and then determine whether the VE's "explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]"). Here, it appears that neither the ALJ nor the VE recognized the inconsistency, and there is no explanation for the conflict. Accordingly, the ALJ erred when he relied on the VE's testimony regarding Plaintiff's ability to perform the outside deliverer and

11

ticket taker positions.

Moreover, despite the fact that the counter clerk position identified by the VE is consistent with the DOT and the limitations in the hypothetical, the VE did not identify the number of jobs available in that specific category. Instead, the VE "lump[ed] all three jobs" together when he testified that "they exist in excess of 2,000 in several regions, the national economy is up to 20,000." (Joint Stip. at 33; AR at 289-90.) Thus, remand is necessary because the Court cannot determine how many counter clerk positions are available or assess whether that number is significant within the meaning of the Social Security Act and corresponding regulations.

## IV. Conclusion

For the reasons stated above, the decision of the Commissioner is reversed and remanded for proceedings consistent with this opinion.

Dated: October 15, 2010

MARC L. GOLDMAN
_____
Marc L. Goldman
United States Magistrate Judge

12